In re Russell Donald **BRYANT** and Leona Kathleen Bryant, Debtors.

Russell Donald **BRYANT** and Leona Kathleen Bryant, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Bankruptcy No. 82–21219–13.
Adv. No. 89–0032.

United States Bankruptcy Court,
D. Kansas.

June 28, 1990.

Maurice B. Soltz, Soltz & Shankland, APC, Kansas City, Mo., Edwin M. Soltz, Soltz & Shankland, APC, Overland Park, Kan., for debtors.

Gigi M. Fowler, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert Olsen, Joe Raymond, U.S. Atty.'s Office, Kansas City, Kan., for U.S.

Lloyd C. Swartz, Chapter 13 Trustee, Topeka, Kan.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the July 21, 1989 Pre–Trial Conference on Plaintiff/Debtors Russell Donald Bryant and Leona Kathleen Bryant's Complaint and the November 28, 1989 hearing on the Defendant United States of America's Motion for Summary Judgment. The plaintiff debtors appeared by and through their attorney Maurice Soltz. The United States appeared by and through its attorneys Robert Olsen and Joe Raymond of United States Attorney's Office.

## FINDINGS OF FACT

Based upon the stipulation of facts submitted by the parties and the record, this Court finds as follows:

1. That on December 13, 1982, Russell Donald Bryant and Leona Kathleen Bryant (hereinafter "debtors") filed their bankruptcy petition for relief under Chapter 13 of the Bankruptcy Code.

2. That the Internal Revenue Service (hereinafter "IRS") filed three claims in the debtors' bankruptcy.

3. That on February 23, 1983, the debtors' One Hundred Percent (100%) Chapter 13 Plan was confirmed by this Court.

4. That on January 6, 1986, the debtors amended their Chapter 13 plan to include delinquent post-petition taxes due to the IRS for 1984.

5. That on March 23, 1986, this Court confirmed the amended plan.

6. That on December 28, 1987, the debtors were discharged by this Court after paying in full their Chapter 13 plan. This Court entered its Final Decree in the debtors' case on January 27, 1988, thus closing the debtors' estate.

7. That on March 14, 1988, the debtors received Form 8126 from the IRS stating that they owed additional taxes for 1984. Debtors then contacted their attorney who wrote Jan Karlin of the U.S. Attorney's Office to cease collection of taxes previously paid through the debtors' plan.

8. That on March 28, 1988, the IRS sent Form 8489 to the debtors. The Form indicated that the IRS offset $295.23 from the debtors' 1987 tax refund to pay the deficiency for the debtors' 1984 tax period.

9. That on March 29, 1988, the U.S. Attorney's Office contacted the Special Procedures Department and the assessment for the penalty and interest was abated. Again, the debtors contacted their attorney, who wrote the U.S. Attorney's Office. Assistant U.S. Attorney Robert Olsen responded and stated that the various correspondence had crisscrossed through the mail and that the debtors would shortly receive their previously offset tax refund in the amount of $295.23. The debtors subsequently received this amount.

10. That on or about January 31, 1989, the debtors filed their 1988 tax returns.

11. That on March 27, 1989, the debtors received Form 8489 from the IRS Form 8489 stated that the IRS had offset the debtors 1988 tax refund in the amount of $327.74 to again pay the tax deficiency for the year 1984. Again, the debtors contacted their attorney.

12. That on April 5, 1989, the debtors filed their Complaint. Said Complaint was amended with leave of this Court on August 2, 1989 to allow the debtors to substitute the United States as the party defendant in place of the Internal Revenue Service.

13. That on June 18, 1989, the debtors received a refund check in the amount of $333.62 covering the amount set off by the IRS plus interest in the amount of $5.88.

14. That on July 21, 1989, this Court held a pre-trial conference in this matter. At that time both parties agreed that no factual dispute existed and upon the filing of briefs this Court would then take the matter under advisement.

15. That on October 11, 1989, the United States filed its Motion for Summary Judgment on this matter.

16. That on November 28, 1989, this Court held a hearing on the United States' Motion for Summary Judgment at which time the Court held that this matter would remain under advisement.

## CONCLUSIONS OF LAW

When a debtor files for relief in bankruptcy he is protected by the automatic stay provision found in § 362 of the Bankruptcy Code. If a creditor violates the automatic stay, the debtor, under § 362(h), is allowed compensation:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Once a debtor has received his discharge from the bankruptcy court he also has protections similar to the automatic stay. Under the Effect of Discharge found in 11 U.S.C. § 524 of the Bankruptcy Code a discharge of the debtor:

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

The Bankruptcy Code is designed to give debtors a fresh start. To obtain this "fresh start" the permanent injunction found in § 524 must be upheld. Violations of this provision cannot be treated lightly or else the "fresh start" of the debtor will never come about. *In re Kiker*, 98 B.R. 103 (Bankr. N.D.Ga.1988) ("The discharge and the injunction of discharge are the key elements of a debtor's fresh start. Violations of the injunction of discharge are considered serious matters and must be redressed." *Id.* at 109); *In re McCullough*, 63 B.R. 97 (Bankr. E.D.Pa.1986) ("Section 524(a) provides a permanent injunction against the collection of discharged debts." *Id.* at 99).

In the case at bar, the debtors received their "fresh start" discharge on December 28, 1987. Upon the completion of their 100% Chapter 13 plan, the IRS claims had been paid in full. However, the IRS violated the injunction under § 524 not once but on several occasions (even while this matter was pending before the Court) in its attempt to collect the already paid tax deficiencies.

This Court finds that the IRS violated the permanent injunction under § 524 and thus should be held accountable for their actions. *In re Conti*, 50 B.R. 142 (Bankr. E.D.Va.1985) ("the intent of § 524 is to apply to all collection efforts by any creditor, and, thus, any determination made by this Court arising under § 524 is binding on the IRS." *Id.* at 145. Further, "the debtor's discharge would be meaningless if this Court could not enforce the injunction provisions of § 524 against the Internal Revenue Service should it violate, intentionally or unintentionally, those provisions." *Id.*)

This Court acknowledges that this action could ordinarily give rise to an action in contempt, and many courts have found this to be so, but this Court finds that it is in the best interest of this case to not hold the United States in contempt at this time. *In re Shafer*, 63 B.R. 194 (Bankr.D.Kan.1986) ("The debtors seek civil contempt sanctions against the IRS for violating the automatic stay." *Id.* at 197); *In re McCullough*, 63 B.R. 97 (Bankr.E.D.Pa.1986) ("a debtor aggrieved by a violation of § 524 could seek recourse through an action for civil contempt." *Id.* at 99); *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va.1985) ("this Court holds that the IRS may be held in civil contempt for violation of § 524(a)(2)." *Id.* at 145.)

Thus, although the United States will not be held in contempt, this Court finds that the IRS should receive sanctions against it for the violations of the permanent injunctions. Since the debtors have already received the monies wrongfully withheld by the IRS together with interest, this Court finds that these sanctions shall be the reasonable attorney's fees of Mr. Soltz. *In re Kiker*, 98 B.R. 103 (Bankr.N.D.Ga.1988) ("The court determines that awarding debtors their attorney's fees and related costs is a sufficient and appropriate remedial sanction to be imposed in the present case. Such an award will compensate debtors in the defense of their rights granted by the discharge." *Id.* at 110); *In re McCullough*, 63 B.R. 97 (Bankr.E.D.Pa.1986); *In re Shafer*, 63 B.R. 194 (Bankr.D.Kan.1986); *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va. 1985); ("an award of attorney fees is en-

tirely appropriate in cases such as this irrespective of an actual finding of civil contempt." *Id.* at 147); *In re Newlin*, 29 B.R. 781 (D.C.E.D.Pa.1983) ("an opposite conclusion would mean the government could engage in dilatory tactics and ignore court orders in a bankruptcy proceeding without regard to the legal expenses imposed on the opposing party." *Id.* at 787.)

Since the debtors have not sought relief under 26 U.S.C. § 7430, this Court finds that it need not consider its applicability to this matter. *In re Shafer*, 63 B.R. 194, 197 (Bankr.D.Kan.1986).

The United States has filed a motion for summary judgment on this matter based on the concept of sovereign immunity. This Court will now address that motion.

When Congress enacted the Bankruptcy Code they addressed the issue of sovereign immunity specifically in § 106. The waiver of sovereign immunity under § 106 occurs when:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

Further, under § 106(c)(1) Congress made it clear that sovereign immunity would not apply, unless an assertion was made, when:

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Thus, this is a limited waiver of immunity against the federal government. (Congress limited the waiver to what would be applicable outside the bankruptcy context.) However, in the legislative history to this section, Congress stated that the *"filing of a proof of claim against the estate by the governmental unit [was] a waiver by the governmental unit of any compulsory*

counterclaims arising out of the same transaction or occurrence." *In re Lile*, 96 B.R. 81, 83–84 (Bankr.S.D.Tex.1989) (emphasis added); *see*, H.R.Rep. No. 95–595, 95th Cong., 1st Session 317 (1977); S.Rep. No. 95–989, 95th Cong., 2d Session 29 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. Further, courts have reasoned that by filing a proof of claim the governmental unit has consented to having its claim fully adjudicated by the bankruptcy court. *Id.* at 84; *see also, In re Greasy Creek Coal Co.*, 1984 WL 15648 (Bankr.S. D.W.Va.1984); *In re Davis*, 20 B.R. 519 (Bankr.M.D.Ga.1982); *In re Holland*, 70 B.R. 409 (Bankr.S.D.Fla.1987) ("IRS may not file a claim with the bankruptcy court and use the remedies and powers of this court to pursue its claim and hold a shield of sovereign immunity in the other hand against the contempt powers of this court." *Id.* at 411).

The United States alleges that this Court should follow the decision of the United States Supreme Court in the *Hoffman v. Conn. Dept. of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). After examining the *Hoffman* decision this Court finds that the case at bar is distinguishable on several grounds. First, the *Hoffman* case dealt with an action against the State of Connecticut, and the Supreme Court held that "in enacting § 106(c) Congress did not abrogate the Eleventh Amendment immunity of the States." *Id.* 109 S.Ct. at 2824 (emphasis added). In the case at bar, it is the federal government through one of its agencies (IRS) and not a state that is involved. Further, there was no proof of claim filed in the *Hoffman* case unlike the case at bar where the IRS filed three claims in the debtors' estate. *Id.* at 2822. Finally, this Court looks at the actual language of Justice White's opinion:

> Moreover, the construction we give to § 106(c) does not render irrelevant the language of the section that it applied "notwithstanding any assertion of sovereign immunity." The section applies to the Federal Government as well, ... and the language in § 106(c) waives the sovereign immunity of the Federal Govern-

ment so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts.

*Id.* at 2823. Thus, this Court is not persuaded by the United States' contentions that they have sovereign immunity based upon the *Hoffman* decision.

In the case at bar, the Internal Revenue Service filed one proof of claim for $1,718.30 on March 21, 1983 for the 1981 income taxes due. The IRS also filed a supplemental claim for $1,124.00 on June 1, 1983 covering the taxes due in 1982; and a third supplemental claim was filed by IRS on November 12, 1985 for $2,009.52 to cover the tax deficiency incurred in 1984. Therefore, the IRS waived its sovereign immunity rights by filing a total of three claims against the debtors' estate.

Moreover, since the debtors seek redress under § 362(h), this Court finds that sovereign immunity has been waived by the IRS under this section because § 362 contains the triggering word "entities." Thus, since sovereign immunity is waived under § 106(c) and § 362 (*In re Lile*, 96 B.R. at 86), this Court finds that the United States' Motion for Summary Judgment should be denied.

IT IS THEREFORE, BY THE COURT, ORDERED That the United States' Motion for Summary Judgment be and the same is hereby denied.

IT IS FURTHER, BY THE COURT, ORDERED That judgment be for the plaintiff debtors against the defendant, United States of America, and that the United States is hereby ordered to pay the debtors' reasonable attorney's fees of their counsel for his representation in the tax matters.

This Memorandum shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.