In re Theodore R. PRICE and Ollie P. Price, Debtors.

Theodore R. PRICE and Ollie P. Price, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 89 C 7852.

United States District Court, N.D. Illinois, E.D.

April 1, 1991.

Benjamin R. Norris, Trial Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Robert E. McKenzie, Kevin D. Sprow, McKenzie & McKenzie, P.C. Chicago, Ill., for Theodore R. Price and Ollie P. Price.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

The United States of America (the "government") has appealed from an order of the Bankruptcy Court awarding attorneys' fees and costs for the Internal Revenue Service's willful violation of the automatic stay of attempts to collect upon the pre-petition obligations of the debtors. *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989). The government contends that the doctrine of sovereign immunity shields it from the imposition of such an award. For the reasons set forth below, the Court concludes that the government has waived its sovereign immunity and affirms the order of the Bankruptcy Court.

### II. FACTS

The underlying facts are not disputed and are set forth in detail in Judge Squires' opinion. 103 B.R. at 990–91. Briefly, the debtors, Theodore and Ollie Price, filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on January 17, 1989. On February 28, 1989, in the absence of objection, the Bankruptcy Court confirmed the Prices' plan to pay off their debts by making monthly payments to the Chapter 13 trustee over a 36–month period.

The Internal Revenue Service ("IRS") was the Prices' chief creditor. There is no dispute that the IRS was properly notified of the pending bankruptcy proceedings. Indeed, on May 9, 1989, the IRS filed a proof of claim indicating that the Prices owed income taxes totalling $12,732.57 for the years 1986, 1987, and 1988.

Pursuant to sections 362(a)(1) and (6) of the Bankruptcy Code, when a debtor files a petition in bankruptcy, his creditors are barred from attempting to collect upon debts which arose prior to the bankruptcy. However, on or about April 17, 1989, the Prices received from the IRS a Notice of Intention to Levy (the "Notice"), which claimed unpaid income taxes in the amount of $3,188.65 for 1988 and informed the Prices that if they failed to make payment within 10 days, the IRS would proceed to levy their available assets.

Shortly after they received the Notice, and after repeated but unsuccessful attempts to resolve the matter with the IRS, the Prices filed a petition for rule to show cause why the IRS should not be held in civil contempt for violation of the automatic stay pursuant to Federal Rule of Bankruptcy Procedure 9020 and 11 U.S.C. § 362. Judge Squires heard the motion on May 3, 1989, and indicated at that time that he would consider the motion as one for relief under 11 U.S.C. § 362(h) rather than one

for a finding of contempt.[1] Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

In response to the Prices' motion, the IRS conceded that the Notice constituted a technical violation of the automatic stay and explained that the Notice had been generated and sent to the Prices in error. The IRS' principal defense to the Prices' motion for sanctions was that sovereign immunity bars the imposition of a monetary award against the United States under § 362(h).

On August 23, 1989, having reviewed the briefing and having held an evidentiary hearing, Judge Squires granted the Prices' motion and awarded them the attorneys' fees and costs they had reasonably incurred in seeking relief from the Notice. 103 B.R. at 996. He concluded that such an award was called for pursuant to § 362(h) because (1) the IRS had violated the automatic stay and (2) the violation was willful given that the IRS had received actual notice that the bankruptcy proceed-

ings were pending. *See id.* at 992–93. He rejected the defense of sovereign immunity, concluding that §§ 106(a) and (c) of the Bankruptcy Code reflect a waiver of that immunity by the United States. *Id.* at 993–95. In so holding, Judge Squires distinguished *Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), in which a divided Supreme Court held that § 106 did not operate to waive the sovereign immunity of the States from monetary liability.

The government has appealed from Judge Squires' ruling, contending that he erred in finding that the United States has waived its sovereign immunity from monetary relief under § 326(h).[2]

## III. ANALYSIS

There is no dispute that the government's waiver of sovereign immunity was a jurisdictional prerequisite to the Bankruptcy Court's order. *See generally United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). There is also no dispute that § 106 of the Bankruptcy Code represents the only po-

---

**1.** In a footnote, the government has argued briefly and without citation to authority that Judge Squires committed a threshold error in considering the debtors' motion pursuant to § 362(h). *See* Brief of the Appellant United States at 6 n. 1. This argument is based upon the premise that at the time the IRS sent the Prices the Notice of Intention to Levy, the Chapter 13 plan had already been confirmed and the property of the estate had accordingly been vested in the Prices pursuant to 11 U.S.C. § 1327(b); thus, in the government's view, the estate had ceased to exist and the automatic stay imposed by § 362(a) was no longer in force. The Court need not consider arguments which are asserted in passing but left undeveloped. *Cf. Mraovic v. Elgin, Joliet & Eastern Ry. Co.,* 897 F.2d 268, 272 (7th Cir.1990) ("Mraovic's failure to support these conclusory statements with argument and case citations effectively waives these arguments on appeal.") Even if the argument had been adequately presented, the Court would not find it persuasive. As set forth below, the Court concludes that a Chapter 13 estate does continue after confirmation. *See* pages 269–70, *infra.* Moreover, assuming *arguendo* that confirmation of the Chapter 13 plan terminates the bankrupt estate, this Court nonetheless concurs with

those other courts which have determined that the automatic stay imposed by § 362(a) remains in effect as to actions against the debtor's property or against the debtor himself upon pre-petition claims until such time as the bankruptcy case is closed or dismissed or the bankruptcy court grants or denies a discharge. *See In re Littke,* 105 B.R. 905, 909 (Bankr.N.D.Ind.1989) (collecting cases).

**2.** The government has not challenged Judge Squires' findings as to the willful violation of the automatic stay. As Judge Squires noted, several courts have found that the issuance of a levy notice by the IRS, albeit inadvertent, amounts to a willful violation of the automatic stay within the meaning of § 362(h) when the IRS is on notice of a pending bankruptcy. *See* 103 B.R. at 995–96, *citing In re Inslaw,* 76 B.R. 224, 240 (Bankr.D.D.C.1987) (collecting cases); *In re Lile,* 103 B.R. 830, 836 (Bankr.S.D.Tex. 1989); *In re Shealy,* 90 B.R. 176, 179–80 (W.D.N.C.1988). *See also In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3d Cir.1990), *following In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). *But see In re Academy Answering Service, Inc.,* 100 B.R. 327, 330 (N.D.Ohio 1989) (finding no willfulness under similar circumstances).

tential source of such a waiver in this case. Section 106 provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is the property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106. The Bankruptcy Court found that subsections (a) and (c) reflected a waiver of the government's immunity which permitted an award of monetary relief pursuant to § 362(h). 103 B.R. at 993–95. On appeal, the government contends that none of the three subsections of § 106 incorporate a waiver of the government's immunity adequate to sustain the Bankruptcy Court's order, while the Prices contend that any of the three subsections suffices to establish a waiver of the government's sovereign immunity. For the reasons set forth below, the Court concludes that all three subsections of § 106 reflect a waiver of sovereign immunity sufficient to permit the award of damages against the government in this case.

### A. Section 106(c)

There are two specific inquiries posed by the government's defense of sovereign immunity under § 106(c): First, whether § 106(c) effectuates a waiver of the government's sovereign immunity as to monetary awards, and second (assuming that the answer to the first inquiry is yes), whether the statutory provision under which the Bankruptcy Court awarded the

Prices their fees and costs contains one of the "trigger words" set forth in § 106(c)(1)—"creditor," "entity," or "governmental unit"—required in order to permit the imposition of monetary damages against the government in this case. Because the parties' positions as to these inquiries rest upon their interpretations of the Supreme Court's recent opinion in *Hoffman*, that decision supplies the starting point for this Court's analysis.

In *Hoffman*, the question before the Supreme Court was "whether § 106(c) of the Bankruptcy Code, 11 U.S.C. § 106(c), authorizes a bankruptcy court to issue a money judgment against a State that has not filed a proof of claim in the bankruptcy proceeding." 109 S.Ct. at 2821. The result was a four-one-four decision which has proved to be fertile ground for disagreement among the courts which have considered *Hoffman*'s application to waiver of the United States' sovereign immunity. Not surprisingly, both the Prices as well as the government maintain that *Hoffman* supports their respective positions in this case.

The four-member plurality opinion in *Hoffman*, authored by Justice White and joined in by Chief Justice Rehnquist and Justices O'Connor and Kennedy, concluded that § 106(c) did not effect a waiver of the States' immunity from suit under the Eleventh Amendment. 109 S.Ct. at 2824. Starting from the premise that Congress must make its intention to waive the States' Eleventh Amendment "unmistakably clear," the plurality concluded that the terms of § 106(c) were devoid of an express authorization for monetary recovery from the States and appeared to authorize only declaratory and injunctive relief. It was not enough, the plurality stated, that the provisions which a bankruptcy court might employ to award monetary relief against a State contained one of the "trigger words" set forth in § 106(c)(1). *Id.* at 2823. In the plurality's view, § 106(c)(1) must be read together with § 106(c)(2), which indicates that governmental entities may be bound by a bankruptcy court's "determination." *Id.* The plurality reasoned that the term

"determination" as used in the Bankruptcy Code does not necessarily envision monetary relief, whereas the term "claim"—a term used in §§ 106(a) and 106(b), but not § 106(c)—envisions a right to payment. *Id.* Thus, "[u]nder this construction of § 106(c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, but would not be subjected to monetary recovery." *Id.* at 2823 (citations omitted). *Id.* The plurality went on to remark:

> Moreover, the construction we give to § 106(c) does not render irrelevant the language of the section that it applies "notwithstanding any assertion of sovereign immunity." The section applies to the Federal Government as well, see 11 U.S.C. § 101(26) (defining "governmental unit" as including the "United States"), and the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts.

*Id.* (citation omitted). Finally, the plurality rejected arguments that the legislative history reflected a congressional understanding that § 106(c) would permit monetary judgments against the States and that the policies underlying the Bankruptcy Code supported such judgments. *Id.* at 2823–24. Reiterating that under *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985), the language of the statute itself must reveal a congressional intent to waive immunity from suit, the plurality deemed resort to the legislative history improper in ascertaining whether there had been a waiver of the States' Eleventh Amendment immunity. *Id.*, 109 S.Ct. at 2824.

In a separate concurrence, Justice Scalia agreed that the Eleventh Amendment prohibited the bankruptcy courts from entering monetary judgments against the States. He agreed, however, "not on the Court's basis that 'Congress did not abrogate Eleventh Amendment immunity' of the States, ... but on the ground that it

had no power to do so." 109 S.Ct. at 2824. Justice O'Connor agreed with Justice Scalia that Congress lacked the authority to abrogate the eleventh amendment immunity of the States, although she also joined in the plurality view that, assuming Congress had such power, it did not effect such an abrogation in § 106(c). 109 S.Ct. at 2824.

In dissent, Justice Marshall, joined by Justices Brennan, Blackmun, and Stevens, contended that the language of § 106(c) sufficed to make clear that it was the intent of Congress to waive the States' Eleventh Amendment immunity from monetary judgments. 109 S.Ct. at 2824–25. The dissent found in the language and structure of § 106 a careful effort to abrogate the Eleventh Amendment immunity of the States. *Id.* at 2825. It criticized the plurality's conclusion that use of the term "determination" in § 106(c)(2) limited the types of judgments which might be imposed against the States to declaratory and injunctive relief: "[I]nstead of trying to force meaning into the word 'determination' through competing analogies to other Code provisions, we should give decisive weight to the explicit language abrogating sovereign immunity." *Id.* In the dissent's view, § 106(c) should be read to permit monetary recovery from the States under each provision of the Bankruptcy Code which contains one of the trigger words set forth in § 106(c)(1). *Id.* at 2825–26. Addressing the plurality's concern that under this construction, "§ 106(c) would apply in a scattershot fashion to over 100 Code provisions," the dissent took pains to point out that most of the Code provisions which contained these trigger words did not contemplate money judgments. *Id.* Those trigger-word provisions which did contemplate money judgments were, in the dissent's view, "crucial to the efficacy of the Code,"; and it was therefore unwise to exempt the States from these provisions and bestow upon them the status of "preferred actors." *Id.* at 2826. Notably, however, the dissent was of the view that § 362(h) was not among this category of trigger-word provisions:

Several Code provisions that permit money judgments do not apply to the States. For example, § 362(h) (1982 ed., Supp. V) provides that an individual injured as a result of a willful violation of an automatic stay may recover actual damages and, where appropriate, punitive damages. Because § 362(h) contains no trigger words, it does not apply to States.

*Id.* at 2826 n. 4 (citations omitted).

Justice Stevens, joined by Justice Blackmun, wrote separately to emphasize that the legislative history of § 106 supported Justice Marshall's interpretation of the statute. 109 S.Ct. at 2827. Noting statements in the legislative history which indicated a congressional intent to authorize the bankruptcy courts to render decisions on a variety of matters which would bind governmental entities, Justice Stevens rejected the plurality's view that this authority did not extent to monetary relief:

Although the primary object of § 106(c) was to provide the bankruptcy court with authority to determine the amount and dischargeability of tax liabilities even if a claim has not been filed, the legislative history thus indicates that the provision was also intended to cover "other matters as well,".... There was no suggestion that this authority did not include the power to order the return of real property and the payment of money damages or that the issues that the bankruptcy court could determine under § 106(c) were limited to whether prospective or declaratory relief was appropriate.

*Id.* at 2828. He went on to conclude:

There is no question that § 106(c) effects a waiver of sovereign immunity. The statute, which applies to the Federal Government, the States, and municipalities alike, see 11 U.S.C. § 101(21), states in the clearest possible terms that provisions of the Code using any of the trigger words apply to governmental units "notwithstanding any assertion of sovereign immunity" and the legislative history supports that reading. It is well settled that when the Federal Government waives its sovereign immunity, the scope of that waiver is construed liberally to effect its remedial purposes. The same rule should be applied under this section when the defendant is a State, rather than the Federal Government or a municipality.

*Id.* at 2829.

Having thus reviewed the views expressed in *Hoffman,* the Court's first task is to determine whether, in light of the Court's holding in that case, Congress has waived the sovereign immunity of the federal government from monetary judgments via § 106. Those courts which have pondered this question in the wake of *Hoffman* have reached different conclusions. A majority have determined that the *Hoffman* plurality's conclusion that § 106(c) does not effect a waiver of immunity to monetary judgments against the States applies with equal force to the federal government. *See Small Business Administration v. Rinehart,* 887 F.2d 165, 170 (8th Cir.1989)[3]; *In re Sheldrick,* 1989 WL 95603 at *1 (N.D.N.Y. Aug. 14, 1989); *In re Lile,* 103 B.R. 830, 835 (Bankr.S.D.Tex. 1989); *In re Bluegrass Coal Co.,* No. 80–11124, Adv. No. 82–0055, slip op. at 5–6 (Bankr.E.D.Ky. Aug. 29, 1989)[4]. The Eighth Circuit's rationale in *Rinehart* is representative:

While the precise question in *Hoffman* was the extent to which the states' eleventh amendment immunity had been abrogated under section 106(c), the Court's opinion refers to the federal government as well, and its analysis is equally applicable to a waiver of sovereign immunity by the federal government.

---

**3.** Although in *Rinehart* the 8th Circuit explicitly held only that punitive damages were not recoverable from the federal government, the narrowness of its holding resulted from the government's failure to appeal from the district courts award of compensatory damages, attorneys' fees, and costs. *See* 887 F.2d at 169. However, the breadth of the court's reasoning plainly applies to all monetary damages. *See* 887 F.2d at 170.

**4.** The court's opinion in *Bluegrass* appears to have been overruled by the Sixth Circuit's decision in *In re Nordic Village, Inc.,* 915 F.2d 1049 (6th Cir.1990), discussed below.

887 F.2d at 170 (citation omitted).[5] In each of these cases, with the exception of *Bluegrass*, the courts specifically concluded that because § 106(c) did not effect a waiver of the United States' sovereign immunity from money damages, the bankruptcy court lacked the power to award such damages under § 362(h). The Ninth Circuit reached the same conclusion, although it did not believe itself bound to do so based upon the *Hoffman* plurality's reasoning alone:

> While other courts have found this rationale sufficient, we know that four is less than five. We therefore turn to the reasoning of the four *Hoffman* dissenters. They concluded that section 106(c) *did* purport to waive the government's immunity from suit for money judgments. However, they also noted that the Bankruptcy Code provision permitting damages awards for violation of the automatic stay, section 362(h), does not include any of the three magic words of section 106(c), and therefore does not apply to governmental units. Although a footnote in a dissent is not exactly a holding, we have no reason to doubt that one or more of the *Hoffman* dissenters would adhere to this rationale. It therefore appears that a majority of the Supreme Court would hold that governmental units are immune to damages actions arising from violations of the automatic stay. Reading the tea leaves, we so hold.

*In re Pearson*, 917 F.2d 1215, 1216 (9th Cir.1990) (emphasis in original), *pet. for cert. filed* (Jan. 28, 1991).

In contrast, other courts have concluded that the Supreme Court's opinion in *Hoffman* is limited to the eleventh amendment immunity of the States and that § 106(c) does in fact effect a waiver of the federal government's sovereign immunity from monetary damages. *See In re Nordic Village, Inc.*, 915 F.2d 1049, 1051–55 (6th Cir. 1990) (2–1 decision); *Abernathy v. United States*, No. 89 C 9520 (N.D.Ill. July 17, 1990) (Zagel, J.) (Transcript of Proceedings); *In re Bryant*, 116 B.R. 272, 276 (Bankr.D.Kansas 1990); *In re Simmons*, 110 B.R. 72, 73 (Bankr.M.D.Fla.1990) (following *Price*); *Price*, 103 B.R. at 994.

Foremost among these opinions is *Nordic Village*. There, the Sixth Circuit found three reasons why *Hoffman* was not controlling on the question of whether the federal government's sovereign immunity had been waived in § 106(c): (1) neither of the two competing views expressed by the plurality and the dissent garnered a majority of the Court; (2) *Hoffman* dealt with waiver of the States' eleventh amendment immunity, not waiver of the federal government's sovereign immunity; and (3) the legislative history of § 106 supported the conclusion that the statute was intended to effect a waiver of sovereign immunity. *See* 915 F.2d at 1051; *see also id.* at 1054–55. Having thus determined that it was not bound by the result in *Hoffman*, the court proceeded independently to consider whether § 106(c) waived the federal government's immunity. Like the dissenters in *Hoffman*, the court of appeals concluded that § 106(c) did effectuate such a waiver as to each provision in the Bankruptcy Code which contained one or more of the requisite trigger words, including those which authorize monetary relief:

> Section 106 is a straight-forward and specific waiver of sovereign immunity as it relates to federal governmental units. There is nothing in the provision suggesting that it is limited to injunctive or declaratory relief. The terms of the waiver take us to any provision of the Code using the trigger words. The meaning could not be clearer.

*Id.* at 1052. The court also found that this interpretation of the statute accorded with its legislative history. The court noted that although earlier House and Senate versions of § 106 provided for only a limited waiver of sovereign immunity, those versions were rejected in favor of a more complete waiver of sovereign immunity reflected in the final version of the bill. *See* 915 F.2d at 1053–54. Reiterating its posi-

---

**5.** For a more thorough exposition of the reasons supporting this position, *see* the dissenting opinion in *In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990).

tion that *Hoffman* was not binding as to the sovereign immunity of the federal government, the court concluded that this legislative history called for a different construction of § 106(c) than that adopted by the plurality in *Hoffman:*

> The White opinion in *Hoffman*, urged upon us by the IRS, emphasized the heavy burden on a party asserting waiver of the eleventh amendment: "[T]o abrogate the States' Eleventh Amendment immunity ... Congress must make its intention 'unmistakably clear in the language of the statute.'" *Hoffman*, 109 S.Ct. at 2822 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Addressing the legislative history, the four Justices held that " '[L]egislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment.'" *Hoffman*, 109 S.Ct. at 2824. That holding is inapplicable to this case. This is a simple case involving the construction of language enacted by Congress, not a constitutional amendment relating to a fundamental concept of federalism. We do not have before us in this case issues relating to states' rights and central power and the various doctrines that have been developed to prevent overreaching by the federal government. The *Hoffman* case involves different values and thus, the analysis of that case was necessarily different than that called for here.

915 F.2d at 1054–55. Finally, although the court acknowledged that pursuant to its interpretation of § 106, the same statutory language accomplished a waiver of the federal government's sovereign immunity but not the States' eleventh amendment immunity, it justified these different results as "an inevitable result of applying two different methods of construction, one dealing with a constitutional provision protecting our federal system, and the other simply determining the will of Congress to permit

the federal government to be sued." *Id.* at 1055.

The other courts which have found a waiver of the federal government's sovereign immunity in § 106(c) have similarly distinguished *Hoffman*. Judge Zagel has emphasized the unique concerns which attend waiver of the States' eleventh amendment immunity:

> Each state government, like the federal government, has a constitutional interest in being immune[ ] from suit. Under the Eleventh Amendment each state also has a constitutional interest in being free from suit in federal court....
>
> . . . .
>
> This choice of forum issue has led the Supreme Court to require plaintiffs to meet a "stringent standard" demonstrating Congress' intent that a state may be sued in federal court.
>
> There is no analogous choice of forum problem when the federal government or its agencies are sued in federal court. [Thus], [t]here is a different standard used to determine if Congress intended to waive the federal government's sovereign immunity from suit.

*Abernathy v. United States*, No. 89 C 9520 (N.D.Ill. July 17, 1990) (Transcript of Proceedings at 4–5.) *See also In re 995 5th Ave. Associates, L.P.*, 116 B.R. 384, 390 n. 5 (Bankr.S.D.N.Y.1990). Several courts have also pointed to the plurality's dictum in *Hoffman* that "the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy court even when it did not appear and subject itself to the jurisdiction of such courts," 109 S.Ct. at 2823, concluding that this statement supplies an additional basis upon which to depart from *Hoffman* insofar as the federal government's sovereign immunity is concerned. *See Abernathy*, Transcript at 6–7; *Bryant*, 116 B.R. at 276; *Simmons*, 110 B.R. at 73; *Price*, 103 B.R. at 994.[6]

---

**6.** The dictum suggesting that § 106(c) effects a waiver of the federal government's sovereign immunity arguably should not be read to reflect the plurality's belief that it does so as to *mone-* *tary* relief, for, as to the States, the plurality also found a waiver of eleventh amendment immunity, but only as to *declaratory* and *injunctive* *relief. See* 109 S.Ct. at 2823.

■ Having reviewed the varying constructions of both § 106(c) and the Supreme Court's opinion in *Hoffman,* the Court concludes that § 106(c) does effect a waiver of the government's sovereign immunity from monetary relief. As is evident from the *Hoffman* opinion itself, and as a number of courts have observed, no single construction of § 106(c) received the endorsement of a majority of the Justices in that case. Thus, even assuming that *Hoffman* is controlling on the matter of the federal government's sovereign immunity under § 106(c), there is no signal from the divided court which suggests one result or another on this question. At the same time, as the courts in both *Nordic Village* and *Abernathy* have observed, there are unique concerns with respect to the waiver of the States' Eleventh Amendment immunity which are not implicated by the waiver of the federal government's sovereign immunity; consequently, it is appropriate here to consider the legislative history of § 106 which the *Hoffman* plurality expressly declined to consider. And as Justice Stevens indicated in *Hoffman* and as the Sixth Circuit reaffirmed in *Nordic Village,* the legislative history of § 106 speaks strongly of a congressional intent to waive the federal government's immunity from suit, including suit for monetary relief. For these reasons, the Court concurs with those other courts which have concluded that § 106(c) waives the sovereign immunity of the federal government from money damages as to each provision of the Bankruptcy Code which contains one of the requisite trigger words.

■ This brings the Court to its second inquiry: Does § 362(h) contain one of the trigger words—"creditor," "entity," or "governmental unit"—which signals the government's waiver of sovereign immunity with respect to the type of relief the Bankruptcy Court awarded in this case. If § 362(h) is viewed in isolation, the answer to this question is "no," for this subsection contains none of the trigger words. In full, the subsection reads:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). The absence of any trigger words from this section lead the four dissenters in *Hoffman* to observe that § 362(h) did not apply to the States. *See* 109 S.Ct. at 2826 n. 4. Based upon that observation, a number of courts have specifically held that the federal government is immune from an award of damages under § 362(h). *In re Pearson, supra,* 917 F.2d at 1216; *In re Woloschak Farms,* 109 B.R. 736, 737 (N.D.Ohio 1989). *See also In re James,* 120 B.R. 802, 816–17 (E.D.Pa. 1990) (state government).[7] The government urges the Court to follow this line of cases.

The Bankruptcy Court declined to treat the dissent's footnote in *Hoffman* regarding the lack of trigger words in § 362(h) as authoritative, reasoning that "[a] point of law merely assumed in an opinion, not discussed, is not authoritative." 103 B.R. at 994 (citations omitted). The text of the dissent's footnote suggests to this Court that the dissenters did not simply assume that § 362(h) lacked the required trigger words, but in fact believed that the words were lacking; thus, the dissent cited that provision in support of its contention that waiver of immunity with respect to all trigger-word provisions of the Code would be limited, and would not subject the States to "scattershot" monetary liability as the plurality contended. *See* 109 S.Ct. at 2826. Nonetheless, the dissent's observation does not constitute a holding, as the Ninth Circuit has noted. *See Pearson,* 917 F.2d at 1216. Moreover, as a number of courts have pointed out, although § 362(h) taken in isolation may not include the requisite trigger words, § 362(a) does. *See In re Bryant, supra,* 116 B.R. at 276; *In re Lile,*

---

7. Judge Ginsberg reached a similar conclusion with respect to § 524(a) of the Bankruptcy Code in *In re Abernathy,* No. 86 B 8694 (Bankr. N.D.Ill. September 25, 1989) (Transcript of Proceedings at 2), finding no trigger words in that section to authorize relief against the federal government. His decision was reversed by Judge Zagel, whose holding is discussed above. However, Judge Zagel did not expressly reach the trigger words issue in his opinion.

96 B.R. 81, 86–87 (Bankr.S.D.Tex.1989).[8] That subsection sets forth the stay provisions which are "applicable to all·*entities*," 11 U.S.C. § 362(a) (emphasis supplied); and it is for violations of this subsection that § 362(h) supplies the remedy. Thus, in search of the trigger words needed in order to subject the government to liability, it is appropriate to read these two subsections together, for it is subsection (h) which gives teeth to subsection (a). As the bankruptcy court noted in *In re Colon*, 114 B.R. 890, 898 (Bankr.E.D.Pa.1990), the legislative history of § 362(a) plainly reflects a congressional intent to make the automatic stay provisions of the Bankruptcy Code applicable to the federal government. Application of § 362(h) to governmental entities such as the IRS is consistent with that purpose, because it places these entities on a par with other creditors who suffer the threat of liability should they violate the stay provisions of the Code. These provisions are, as many courts have acknowledged, vital to the success of the "fresh start" which the Code was meant to provide debtors. *See Price*, 103 B.R. at 992; *see also Bryant*, 116 B.R. at 274. Thus, it would be inconsistent with the spirit of both the Code and the congressional intent underlying § 362(a) to exempt the federal government from liability under the enforcement provisions of § 362(h). *See Hoffman*, 109 S.Ct. at 2826–27 (Marshall, J. dissenting); *In re Saint Joseph's Hospital*, 103 B.R. 643, 650–51 (Bankr.E.D.Pa.1989). Debtors in bankruptcy, who typically have so little to begin with, should not be made to bear the costs imposed by the government's mistakes. Accordingly, the Court finds that the trigger word "entities" included in § 362(a) is sufficient to permit the imposition of monetary liability upon the government pursuant to § 362(h) for violations of the automatic stay.

B. *Section 106(a)*

 ▪ The Bankruptcy Court also concluded that § 106(a) effected an additional waiver of the government's sovereign immunity sufficient to permit an award of attorneys' fees under § 362(h). 103 B.R. at 995. Pursuant to § 106(a), by filing a proof of claim in the bankruptcy proceedings, the government is deemed to have waived its sovereign immunity with respect to any claim against it which "is the property of the estate and that arose out of the same transaction or occurrence out of which [the government's] claim arose." Judge Squires concluded that the Prices' claim for attorneys' fees satisfied both of the prerequisites of § 106(a). 103 B.R. at 995. He reasoned that because the Prices' attorneys' fees would have to be paid out of their post-petition earnings unless the IRS were ordered to pay them, the claim for attorneys' fees constituted "property of the estate" as defined in 11 U.S.C. § 1306(a)(2). *Id.* Further, because the claim for fees arose from the IRS' improper attempt to collect upon the Prices' 1988 income taxes, and those taxes were among those included in the proof of claim which the IRS had previously filed, Judge Squires found that the Prices' claim under § 362(h) arose under the same "transaction or occurrence" out of which the government's claim arose.

The government contends that Judge Squires misapplied § 106(a) and that the Prices' claim for attorneys' fees satisfies neither of the two criteria set forth in that subsection for waiver of sovereign immunity. In the government's view, the claim for fees should not be viewed as property of the estate because the claim arose after the Bankruptcy Court approved the debtors' plan. Further, the government argues that even if the claim can be viewed as property of the estate, it does not constitute a claim which arose out of the same transaction or occurrence from which the government's claim. arose, for the IRS claim arose out of the Prices' failure to pay

---

**8.** As the IRS has noted, the bankruptcy court in *Lile* subsequently retreated from its holding that the federal government was subject to liability under § 362(h). *See* 103 B.R. at 835. However, the court did so based upon the conclusion of the *Hoffman* plurality that § 106(c) did not effect a waiver of immunity from monetary damages, rather than upon the purported lack of trigger words in § 362(h).

their income taxes, whereas the Prices' claim for fees arose out of the IRS' violation of the automatic stay much later. Neither of these arguments is persuasive.

The Prices' claim for fees qualifies as property of the estate, even though that claim arose after confirmation of the plan for discharge of their debts. The government relies upon § 1327 of the Code, which provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Yet, as the Bankruptcy Court noted, and as the government acknowledges, § 1306 defines "property of the estate" to include property which the debtor may acquire *after* confirmation of a Chapter 13 plan, including "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(2). In view of the divergent terms of § 1327(b) and § 1306(a)(2), courts have divided as to the status of the estate property upon confirmation of the debtor's plan. *See In re Smith*, 104 B.R. 695, 699 (Bankr.E.D.Pa.1989). One line of cases holds that upon confirmation of a Chapter 13 plan, the debtor obtains title to the property of the bankruptcy estate and the ability to dispose of that property; thus, although the debtor remains obligated to comply with the provisions of the plan, there is no property left within the bankruptcy estate after confirmation. *See In re Mason*, 45 B.R. 498, 500 (Bankr.D.Ore. 1984), *aff'd*, 51 B.R. 548 (D.Ore.1985); *In re Stark*, 8 B.R. 233, 234 (Bankr.N.D.Ohio 1981). *See also Laughlin v. U.S. Internal Revenue Service*, 98 B.R. 494, 495–96 (D.Neb.1989), *aff'd on other grounds*, 912 F.2d 197 (8th Cir.1990); *In re Petruccelli*, 113 B.R. 5, 16 (Bankr.S.D.Cal.1990); *In re Walker*, 84 B.R. 888, 888 (Bankr.D.C.1988); *In re Walker*, 67 B.R. 811, 812 n. 3 (Bankr.C.D.Calif.1986), *aff'd on other grounds*, 861 F.2d 597 (9th Cir.1988); *In re Dickey*, 64 B.R. 3, 4 (Bankr.E.D.Va.1985).

A contrary line of authority holds that any property which is necessary to implementation of the Chapter 13 plan remains property of the estate after the plan is confirmed. *See In re Clark*, 71 B.R. 747, 750 (Bankr. E.D.Pa.1987); *In re Root*, 61 B.R. 984, 985 (Bankr.D.Colo.1986); *In re Adams*, 12 B.R. 540, 542 (Bankr.D.Utah 1981). The court in *In re Aneiro*, 72 B.R. 424, 429–30 (Bankr.S.D.Cal.1987) reasoned somewhat similarly, holding that although confirmation of the plan vests property of the estate with the debtor, the debtor's ownership interest in such property is limited to the degree the property is required for successful completion of the plan. This line of cases received the endorsement of the dissent in *Laughlin v. U.S. Internal Revenue Service*, 912 F.2d 197, 202 (8th Cir.1990)[9], which added to the rationale of these cases the observation that a number of Code provisions—including §§ 704(9), 347(a), 345, and 349(b)(3)—assume the continuing existence of the bankruptcy estate even after confirmation of a Chapter 13 plan. *Id.*

This Court finds the reasoning of the second line of authority to be persuasive and concludes, as did Judge Squires, that a post-confirmation claim for attorneys' fees can qualify as property of the estate for purposes of § 106(a). Plainly there is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, at least to the extent that the debtor's post-confirmation income or other property is committed to implementation of the plan. Further, although the Prices' claim for attorneys' fees did not exist at the time the plan was confirmed and thus could not have been committed to implementation of the plan, it nonetheless qualifies as property of the estate for at least two reasons. First, as Judge Squires reasoned, any attorneys' fees which were incurred as the result of the IRS' error and which the Bankruptcy Court might award to the Prices' counsel would, if imposed upon the Prices rather than the IRS, dimin-

---

**9.** The majority of the appellate panel in *Laughlin* did not reach the question of whether confirmation of the Chapter 13 plan terminates the bankruptcy estate. *See* 912 F.2d at 198 n. 4.

ish the income which the Prices could devote to the payment of their prior debts. 103 B.R. at 995. Second, § 541(a)(7) of the Code includes within the property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). The Prices' claim for attorneys' fees and costs constitutes just such an interest. *United States v. McPeck*, 910 F.2d 509, 512 n. 7 (8th Cir.1990); *In re Lile, supra*, 96 B.R. at 84. Moreover, the fact that the interest arose after confirmation is immaterial, for § 1306(a)(1) makes clear that property of the types defined in § 541 amounts to property of the estate so long as the debtor acquires it "before the case is closed, dismissed, or conversed to a case under chapter 7, 11, or 12 of this title, which ever occurs first." 11 U.S.C. § 1306(a)(1). Thus, confirmation of a Chapter 13 plan does not, as the government argues, prevent after-acquired property from being included within the estate.

The Prices' claim for attorneys' fees also arose out of the same transaction or occurrence as the government's claim for income taxes. In making this determination, the Court seeks guidance in the same analysis which governs identification of compulsory counterclaims under Fed.R.Civ.P. 13(a), which also poses the "same transaction or occurrence" inquiry.[10] *See In re Friendship Medical Center, Ltd.*, 710 F.2d 1297, 1301 (7th Cir.1983); *In re Klingbert Schools*, 68 B.R. 173, 177 (N.D.Ill.1986) (Aspen, J.), *aff'd*, 837 F.2d 763 (7th Cir.1988). *See also In re Bulson*, 117 B.R. 537, 541 (9th Cir. BAP 1990); *Lile*, 96 B.R. at 85. Under Rule 13(a), the "crucial" inquiry is whether there exists a "logical relationship" between the claim and counterclaim. *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1291 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). *See also Bur-*

*lington Northern R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir.1990). This test is not given to wooden or formalistic application; rather, "[a] court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Id.* at 711–712 (footnote omitted). In considering these factors, a court must remain cognizant that the purpose of Rule 13(a) is to conserve judicial resources by promoting the resolution in a single action of all claims which arise from a common factual background. *See id.* at 710; *Valencia*, 617 F.2d at 1291; *Lile*, 96 B.R. at 85. Here, the relationship between the Prices' claim for fees and the IRS' proof of claim is both logical and substantial, revealing that the two claims derive from the same transaction or occurrence for purposes of § 106(a). The government's contention to the contrary rests upon the premise that the IRS error— which gave rise to the attorneys' fees—and the Prices' failure to pay their income taxes—which gave rise to the government's claim against the estate—were events which were distinct and unrelated and thus must be treated separately for purposes of the "same transaction or occurrence test." Yet, the Notice which the IRS erroneously sent to the Prices and which gave rise to the attorneys' fees had its genesis in the government's endeavors to collect upon the Prices' overdue income taxes. The levy and the resulting claim for fees would not have occurred had there not been unpaid taxes which the government was trying to collect. Thus, an interpretation which treats the two claims as arising from distinct events turns a blind eye to reality. *See Bulson*, 117 B.R. at 541 (claim for fees under § 362(h) arose from same transaction or occurrence as IRS' claim for unpaid taxes)[11]; *Lile*, 96 B.R. at 84–85 (same).

---

**10.** Rule 13(a) provides, in relevant part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its

adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

**11.** Although *In re Spencer*, 123 B.R. 858, 862 (Bankr.N.D.Cal.1991), suggests that *Bulson* has been overruled by the Ninth Circuit's decision in *Pearson, supra*, this Court does not read *Pearson* so broadly. *Pearson* only addressed the waiver of sovereign immunity under § 106(c),

*See also In re Cook United, Inc.*, 117 B.R. 301, 306 (Bankr.N.D.Ohio 1990) (trustee's preference claim arose from same occurrence as city agency's proof of claim, where both emanated from the debtor's filing of bankruptcy petition).

Accordingly, the claim for attorneys' fees satisfies both of the prerequisites set forth in § 106(a). The Bankruptcy Court was therefore correct in concluding that § 106(a) supplied an alternate basis for the waiver of sovereign immunity required in order to impose liability for the debtors' attorneys fees and costs upon the government. *But see* n. 12, *infra*.

## C. Section 106(b)

■ The Bankruptcy Court did not expressly consider whether a waiver of sovereign immunity supporting the award might also be found pursuant to § 106(b). However, this provision has been addressed at length in the briefing before this Court and it was referenced in the briefing below (R. 7 at 4; *see also* 103 B.R. at 994); consequently, it is one which this Court may reach on appeal. *See Frederick v. Marquette National Bank*, 911 F.2d 1, 2 (7th Cir.1990) (noting general rule that appellate court can affirm lower court's decision on any ground fairly supported by the record, so long as it was one urged by the appellee and which the appellant therefore had the opportunity to address); *Continental Training Services, Inc. v. Cavazos*, 893 F.2d 877, 881 n. 5 (7th Cir.1990) (alternate arguments which were raised but not considered by lower court remain viable alternative grounds for resolution of the case on appeal).[12] Like § 106(a), § 106(b) reflects a waiver of the government's sovereign immunity as to claims which are property of the estate. However, § 106(b) stands apart from § 106(a) in two respects: first, § 106(b) contains no "same transaction or occurrence" test, and second, § 106(b) allows recovery in the form of an offset against any amount awarded to the government rather than any affirmative recovery. *See Texaco, Inc. v. Louisiana Land and Exploration Co.*, 113 B.R. 924, 931–32 (M.D.La.1990).[13] Like § 106(a), however, § 106(b) waives sovereign immunity as to claims which are "property of the estate," and the government reiterates its position that the claim for attorneys' fees does not fall into this category of property. The government also contends that because the relief afforded under § 106(b) is in the nature of a set-off, this section does not reflect congressional intent to waive sovereign immunity with respect to awards of attorneys' fees, because in a given case such relief might well exceed the amount of any recovery obtained by the government. For the reasons set forth below, neither argument is persuasive.

The Court has addressed the government's argument as to the scope of "property of the estate" above with respect to § 106(a), and rejects it here for the same reasons. The incurring of attorneys' fees as the result of the IRS' error burdened the debtors' post-confirmation income, which was otherwise dedicated to implementation of the plan for satisfaction of the debtors' pre-petition debts. At the same time, the claim for reimbursement of the fees represents a post-petition interest which falls within the scope of § 541(a)(7). Accordingly, that claim constitutes property of the estate for purposes of § 106(b).

The Court finds no merit in the government's second contention that § 106(b) does not permit an award of attorneys' fees

and concluded that this provision did not effect the waiver of sovereign immunity needed to support monetary relief against the government under § 362(h). *Bulson*, however addressed waiver of sovereign immunity under § 106(a), a provision not considered by the Ninth Circuit in *Pearson*.

**12.** Indeed, in *United States v. McPeck, supra*, the Eighth Circuit indicated that a court awarding damages against a governmental unit should look first to § 106(b), and only to § 106(a) if the amount of the debtor's claim exceeds the amount of the governmental unit's claim. 910 F.2d at 509.

**13.** Thus, an award imposed against the IRS under § 106(b) would be satisfied by means of a reduction in the amounts the debtor would otherwise pay to the IRS pursuant to the confirmed plan, rather than by means of an affirmative payment by the IRS to the debtor.

against the government because the amount of recovery under that section is limited by the amount of the government's own recovery. That the amount of the government's claim imposes a ceiling upon the recovery of attorneys' fees in circumstances such as these does not suggest in and of itself that such recovery should be barred completely, nor is there any indication that Congress believed it should. As the court noted in *Saint Joseph's Hospital, supra,* "[T]he filing of a proof of claim in a bankruptcy proceeding is a 'voluntary appearance of the state in intervening as a claimant of the fund in court.'" 103 B.R. at 650, quoting *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883). Thus, when the IRS filed its proof of claim in these proceedings, it laid claim to a common fund subject to the claims of the Prices' other debtors. In this context, it makes eminent sense that the amount of recovery afforded to the IRS from that fund in court may be reduced to the extent the IRS took action in violation of the automatic stay which imposed unnecessary costs upon the debtors and thereby jeopardized their ability to meet the demands of the confirmed plan to eliminate their pre-petition debts. It may be true that in some situations, the claim which is to be offset against the government's claim is larger than the government's claim, and thus recovery under § 106(b) would not be as complete as it otherwise might be under §§ 106(a) or (c). But that is not the case here; no one contends that the amount of the Bankruptcy Court's award exceeds the claim for unpaid taxes in the amount of $12,732.57 which the IRS filed.[14] In any event, the cap which the amount of the government's claim imposes upon recovery under § 106(b) represents an equitable limitation safeguarding the public fisc against prospective liability for amounts beyond that which the government sought from the estate in the first instance. Thus, contrary to the government's suggestion, the provisions of § 106(b) counsel in favor of

recovery in the present case rather than against it. All interests are served by the terms of this section: The debtors are afforded the opportunity to obtain compensatory relief (albeit not unlimited) for the injury caused by the government's wrongful conduct, while the government suffers no affirmative liability, merely a reduction in the amounts which it would have recovered but for its misdeeds. *See generally United States v. McPeck, supra,* 910 F.2d at 512–13.

## IV. CONCLUSION

For the reasons set forth above, the Court affirms the decision of the Bankruptcy Court.

---

14. From the record, it does not appear that the Bankruptcy Court's award of fees and costs was reduced to judgment for an amount certain prior to appeal. The final order of the Bankruptcy Court included in the record simply reaffirms that the IRS is liable to the debtors for their reasonable attorneys' fees and costs. (R. 14.)