**In re Arthur Douglas PULLIAM and Jaime Ellen Pulliam, Debtors.**

No. 00–14568.

United States Bankruptcy Court, D. Kansas.

May 15, 2001.

David G. Arst, Wichita, KS, for debtors.

D. Michael Case, Wichita, KS, for D. Michael Case, trustee.

### ORDER GRANTING DEBTORS' MOTION TO SHOW CAUSE AND FOR SANCTIONS AND HOLDING LEWIS & WEST, INC., IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY UNDER § 362(a).

ROBERT E. NUGENT, Bankruptcy Judge.

This matter came before the Court for evidentiary hearing on April 17, 2001 concerning Debtors' Amended Motion To Show Cause And For Sanctions pursuant to Fed. R. Bankr.P. 9020(b). On November 30, 2000, Arthur and Jaime Pulliam, debtors, filed their Motion To Show Cause why Lewis & West, a creditor, was not in contempt for violation of the automatic stay under § 362(a) which took effect on November 15, 2000, the date the Pulliams filed their Chapter 7 petition.[1] In their motion, the Pulliams asserted that Lewis & West had continued to garnish Mr. Pulliam's wages pursuant to a garnishment order entered October 30, 2000, even after receiving notice of the pending case from the court and a request for release from the Pulliam's counsel. Thereafter, on December 11, 2000, the Pulliams filed an Amended Motion To Show Cause And For Sanctions claiming that Lewis & West had garnished another $506.47 since November 30, 2000. Lewis & West objected to the

---

[1]. All code section references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise noted.

Motion to Show Cause and for Sanctions on December 21, 2000, stating that the garnishment entered on October 30, 2000 had been released and the garnishee had been notified of the release. On January 24, 2001, the Court ordered Lewis & West to appear and show cause why it should not be held in civil contempt for violation of § 362, Lewis & West objected, and the Court scheduled a contempt hearing. Arthur Pulliam, debtor, appeared in person and by counsel, David G. Arst. Lewis & West, Inc., appeared by Tim Connell. Following Mr. Pulliam's testimony and counsels' arguments, the Court took the matter under advisement and is ready to rule.

### FINDINGS OF FACT

Prior to the hearing, the parties filed a partial stipulation of facts and several exhibits. The parties stipulated to the following facts. Lewis & West obtained a judgment against Mr. Pulliam on September 6, 2000 in the District Court of Butler County, Kansas, for $966.85 with interest at the rate of 1.75% per month from December 15, 1999, until paid in full; and for costs.[2] Lewis & West filed a garnishment order on October 30, 2000, and served it on Timec Co., Mr. Pulliam's employer, the next day.[3] On November 15, 2000, the Pulliams filed their Chapter 7 petition and mailed a Suggestion of Bankruptcy to Lewis & West along with a file-stamped copy of the petition. The Court sent notice to Lewis & West of the Pulliams' bankruptcy the following day. On November 22, 2000, Mr. Arst's assistant called Mr. Connell asking that the garnishment be released as to those funds obtained after the filing of the bankruptcy. Mr. Connell replied that he did not know what amounts those would be. Mr. Arst's assis-

tant stated that she would discuss the matter with Mr. Arst. On November 30, 2000, the Pulliams filed the instant Motion and, on December 11, 2000, the Pulliams Amended that Motion alleging the further garnishment and attachment of some $506.74. On December 14, 2000, Lewis & West received a copy of the wage garnishment answer and filed a garnishment release that same day.[4]

At trial, the Pulliams offered several additional exhibits. Exhibit 1 was a deduction report from Timec Company, showing the garnishment dates and amounts. Exhibit 2 was a check from Timec payable to Mr. Pulliam for $1100, the total amount garnished; and exhibit 3 included Mr. Arst's time sheets and file notes. Lewis & West objected to the admission of debtors' exhibits 2 and 3 because they had not been supplied to the creditor in advance of trial. The Court sustained Lewis & West's objection to debtors' exhibits 2 and 3 and their contents are not a part of the record of these proceedings.

The Court heard undisputed testimony from Mr. Pulliam. Mr. Pulliam testified that he is employed at Timec Company in El Dorado, Kansas, and that shortly before filing his Chapter 7 petition, his wages were garnished and continued to be garnished after the bankruptcy was filed. Mr. Pulliam testified that $1100 was withheld by Timec through December 24, 2000 because the garnishment was not released. Mr. Pulliam identified Exhibit 1, a compilation by Timec of the garnishments totaling $1100. Lewis & West objected to admission of this exhibit, but the Court admitted Exhibit 1 for the limited purpose of showing the dates money was garnished from Mr. Pulliam's paycheck.

---

**2.** Stipulated Exhibit A.

**3.** Stipulated Exhibits B and C.

**4.** Stipulated Exhibits D and E.

Exhibit 1 clearly shows that funds were withheld from Pulliam's wages after the commencement of the case and after November 22, when creditor's counsel learned of the filing. Mr. Pulliam testified that the garnishment was finally released as of January 3, 2001. He further testified that he is compensated at $16.50 per hour. Mr. Pulliam contended on cross examination that money was garnished from his wages after Lewis & West's garnishment order was served, and continued even after he filed his case.

Debtors assert that § 362(a) required Lewis & West to immediately release the garnishment without awaiting an answer from Mr. Pulliam's employer. Although debtors requested a prompt release of the garnishment, Lewis & West declined, preferring to wait until Timec had filed its garnishment answer so that it could determine how much was garnished pre-petition and how much post petition.

Lewis & West argues that it did not know what funds had been attached and could not determine how much to release. Lewis & West further contends that declining to dismiss the garnishment does not violate the automatic stay. Lewis & West also asserts that its only delay was in awaiting the paperwork to release (in other words, Timec's answer) and that Lewis & West released the garnishment the same day it received Timec's answer. In support of its position, Lewis & West cites two cases, *Carlsen v. Internal Revenue Service (In re Carlsen)*, 63 B.R., 706 (Bankr.C.D.Cal.1986) (requires garnishment be released within reasonable time), and *O'Connor v. Methodist Hosp. of Jonesboro, Inc.(In re O'Connor)*, 42 B.R. 390 (Bankr.E.D.Ark.1984) (stay violation only because creditor received order to pay in and took possession of money). Lewis & West believes the issue to be one of whether the garnishment was released quickly enough, not whether it allowed attachment to remain in effect post petition.

## DISCUSSION

■ Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed. Pursuant to § 362(a), "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, 303 of this title... operates as a stay, applicable to all entities of—

> (1)the commencement or *continuation,* including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against that debtor that was or could have been commenced before the commencement of the case under this title..." (Italics added).

■ The consequences of violating the automatic stay provisions are set forth in § 362(h), which provides that:

> "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages."

Additionally, a party injured by a willful violation of the stay can seek sanctions for contempt of court under § 105(a). *See Mountain America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir.1990).

■ Contrary to Lewis & West's argument, a garnishing creditor has an affirmative duty to release the garnishment of a debtor's wages as soon as it learns of the pending bankruptcy. To hold otherwise would be to eviscerate the power and purpose of the stay which is designed to protect debtors from collection activity during the pendency of a case in bankruptcy.

This Court respectfully disagrees with the authority cited by Lewis & West that it did not violate the stay by waiting until Timec had filed its garnishment answer to release the garnishment. *See O'Connor*, 42 B.R. at 392 (Court does not believe it is necessary for creditor to dismiss the garnishment to avoid violating the automatic stay; to avoid violating the stay, creditor must not take any affirmative action towards proceeding with the garnishment).

■ A creditor who has initiated collection efforts without knowledge of a bankruptcy petition has an affirmative duty to restore the *status quo* without the debtor having to seek relief from the Bankruptcy Court. *In re Miller*, 10 B.R. 778, 780 (Bankr.D.Md.1981) *aff'd* 22 B.R. 479 (D.Md.1982). This duty arises from the language of § 362(a) which stays the commencement or *continuation* of a judicial proceeding against the debtor. Courts presented with this issue have construed this language to mean, "[a]t whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the proceeding." *Morris v. St. Joseph Med. Center, Inc. (In re Fisher)*, 194 B.R. 525, 532 (Bankr.D.Kan.1996)(quotation omitted); *O'Connor*, 42 B.R. at 392; *In re Elder*, 12 B.R. 491, 494–495 (Bankr. M.D.Ga.1981); *In re Baum*, 15 B.R. 538, 541 (Bankr.E.D.Va.1981)("It is the creditor's responsibility to stop the downhill snowballing of a continuing garnishment.") It has also been noted that a creditor's inaction can be as detrimental to a debtor as affirmative collection efforts. *See Elder*, 12 B.R. at 494; *Miller*, 10 B.R. at 778. Certainly, causing the withholding of over $1,000 of debtors' wages for a period of several months could work a detriment on the debtor and his family.

■ Lewis & West had an affirmative duty to release the garnishment of Mr. Pulliam's wages as soon as it learned of his pending bankruptcy. When Lewis & West refused to release the garnishment, claiming it could not file a release until Timec had filed its answer, Timec remained bound to withhold Mr. Pulliam's wages for any pay period ending during the 30 days following service of the order. *See* Kan. Stat. Ann. § 61–2005(c) (1999). This is precisely the "continuation" of process stayed by § 362(a). Lewis & West simply had no reason to delay releasing the garnishment. It is no excuse that Lewis & West did not know the exact amount of post-petition wages that had been garnished from Mr. Pulliam's paycheck. Wages that Mr. Pulliam earned pre-petition were also property of the estate under § 541 in which the trustee could conceivably claim an interest. *See Fisher*, 194 B.R. at 529 ("The fact that St. Joseph obtained a pre-petition garnishment lien does not preclude the Debtor's interest from becoming property of the estate.") The Court does not find that awaiting the employer's answer is the sort of "administrative delay" that some courts have found to excuse stay violations. *See Carlsen*, 63 B.R. at 709 (Court notes that some delays in releasing levies may be administrative, such as when paperwork makes "its way through channels.") Therefore, the Court finds that Lewis & West willfully violated § 362(a).

■ In holding that Lewis & West violated the automatic stay, the Court must determine what damages Mr. Pulliam sustained. To prevail under § 362(h), Mr. Pulliam must prove that Lewis & West action in failing to immediately release the garnishment was willful and that he incurred actual damages. The U.S. Court of Appeals for the Tenth Circuit has not defined "willful" for purposes of § 362(h), however, in *Diviney v. NationsBank of Texas (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP 1998), the U.S. Bankruptcy Appellate Panel for the Tenth Circuit adopted the majority definition out-

lined in *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89 (Bankr. D.D.C.1988):

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

■ Other Kansas bankruptcy courts have adopted this definition of "willful" when the automatic stay has been violated. *See In re Fisher,* 194 B.R. at 532 (willful violation of automatic stay, as would allow award of costs and attorney's fees, occurs when creditor has knowledge of automatic stay yet intentionally takes actions which violate the stay). Even if the Court had not found Lewis & West in civil contempt, the Court could award attorney's fees and related costs to Mr. Pulliam. *See Bryant v. United States (In re Bryant),* 116 B.R. 272, 275 (Bankr.D.Kan.1990).

■ Here it is undisputed that the creditor knew of the inception of the stay and that the creditor intentionally allowed the garnishment to continue. The creditor's "good faith" belief in its entitlement to some of debtor's wages is not a defense to the creditor's stay violation. The Court finds that Mr. Pulliam has proven by a preponderance of the evidence that Lewis & West willfully violated the stay when notice of Mr. Pulliam's bankruptcy case was mailed to it around November 16, 2000, yet waited another month, until December 14, 2000, to file the release. *See TranSouth Fin. Corp. v. Sharon (In re Sharon),* 234 B.R. 676, 687 (6th Cir. BAP 1999); *Lamar v. Mitsubishi Motors Credit of America (In re Lamar),* 249 B.R. 822, 825 (Bankr.S.D.Ga.2000). For this viola-

tion, sanctions under § 362(h) are appropriate. The Court does note that Lewis & West never made any attempt to collect the monies garnished from Mr. Pulliam and the wages have been returned to Mr. Pulliam. Debtor's role in seeking only the release of post-petition garnished wages likely confused the matter further. Debtor presented no evidence concerning any actual damages it may have sustained by virtue of this creditor's stay violation. Weighing these factors, the Court finds that $300.00 in attorney's fees is a sufficient and appropriate remedial sanction to be imposed in this case. *See In re Bryant,* 116 B.R. 272, 275 (Bankr.D.Kan.1990) (citation omitted).

IT IS THEREFORE ORDERED THAT Lewis & West be held in contempt of court for violation of the automatic stay pursuant to 11 U.S.C. § 362(a) with sanctions awarded to debtor against Lewis & West in the amount of $300.00 attorney's fees.