In re Tara Bushaw **SCROGGIN,**
Debtor.

**Lawrence Athletic Club, Appellant,**

v.

**Tara Bushaw Scroggin and William H. Griffin, Trustee, Appellees.**

BAP No. KS–05–127.
Bankruptcy No. 04–24305–13.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 16, 2007.

---

Lynn D. Lauver (H. Kent Hollins with him on the brief), of the Bankruptcy Clinic, Topeka, Kansas, for Appellant.

Jonathan C. Becker, Lawrence, Kansas, for Appellee Tara Bushaw Scroggin.

Before CLARK, CORNISH, and TALLMAN[1], Bankruptcy Judges.

CORNISH, Bankruptcy Judge.

Creditor Lawrence Athletic Club ("LAC") appeals a judgment of the United States Bankruptcy Court for the District of Kansas entered in favor of Tara Bushaw Scroggin ("Debtor") for damages and sanctions resulting from LAC's willful violation of the automatic stay. Debtor filed a motion to dismiss the appeal as moot which is also before this Court. For the following reasons, we determine that: 1) the appeal is not moot, so we must address the merits of the case; and 2) based on the merits, the judgment of the bankruptcy court should be affirmed.

## I. BACKGROUND FACTS

LAC[2] obtained a money judgment against Debtor in Douglas County, Kansas state court in June, 2004. In September, 2004, LAC obtained a state court order allowing garnishment of Debtor's wages. LAC forwarded the order to Debtor's employer, Wal–Mart, who began garnishing Debtor's paycheck. Debtor filed her Chapter 13 bankruptcy action on October 12, 2004. Notice of the bankruptcy action was mailed to LAC on October 13, 2004. Nevertheless, garnishment of Debtor's paycheck continued.

According to LAC, it sent a document entitled "Release of Garnishment" to the Douglas County District Court on October 19, 2004.[3] However, LAC did not send a copy of the release to Debtor, Debtor's attorney, or Wal–Mart. LAC's rationale for not immediately serving a copy of the release on these persons was that it was waiting for the court to return a file-stamped copy which it would then forward to Wal–Mart.

Debtor filed a motion for turnover to recover funds that had been garnished from Debtor's October 15th and October

---

1. Honorable Howard R. Tallman, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. LAC used the Law Office of H. Kent Hollins to perform its debt collection. Therefore, references to LAC should be construed to include its representative, Kent Hollins.

3. Conflicting testimony in the record is that the release was sent on October 19, 2004, or on October 15, 2004. The actual date is not important to our analysis. The document allegedly sent by LAC in mid-October was never received by the state court.

30th paychecks. The funds were promptly received by Debtor before a hearing was held on the motion. Therefore, the first motion for turnover was withdrawn. Still, garnishment of Debtor's wages continued, forcing her to file a "Second Motion for Turnover Pursuant to 11 U.S.C. § 542 Combined with a Motion of Subordination under 11 U.S.C. § 510(c) and for Damages and Attorney Fees under 11 U.S.C. § 362(h)" ("Second Turnover Motion") to recover monies withheld from Debtor's November 15th, November 30th, and December 14th paychecks. A hearing on the Second Turnover Motion was set for December 21, 2004.

In the meantime, Debtor's counsel contacted LAC to obtain a copy of the Release of Garnishment. Debtor's counsel then took the release to the courthouse to get it file stamped, and returned a file stamped copy to LAC. The state court's records indicate that the Release of Garnishment was first filed on December 6, 2004. This was the filing done by Debtor's counsel. Contrary to LAC's assertions, the state court never received the copy of the Release of Garnishment allegedly sent by LAC in mid-October.

At the December 21, 2004, hearing on Debtor's Second Turnover Motion, LAC took the position it had done everything it possibly could do to stop the garnishment of Debtor's wages. According to LAC, to terminate a wage garnishment in Kansas, all that is required is to file the "Release of Garnishment" document authorized pursuant to Administrative Order No. 159 of the Supreme Court of the State of Kansas.[4] The bankruptcy court admonished LAC that it could in fact do more: it could procure an order releasing the garnishment from the state court and send a file stamped copy of the court's order to Wal–Mart. Specifically, the bankruptcy court stated "the creditor can, and should, undertake additional action to procure the order from the District Court Judge." *Transcript of Proceedings held December 21, 2004,* at 11, *ll.* 7–9, *in* Appellant's App. at 68.

Additionally, the bankruptcy court ordered LAC to pay Debtor the funds garnished from her November 15th, November 30th, and December 14th paychecks, notwithstanding that LAC had not yet received the withheld proceeds from Wal–Mart. LAC appealed that order to this Court ("First Appeal"). However, while the First Appeal was pending, LAC received the garnishment proceeds from Wal–Mart and turned them over to Debtor. Therefore, the First Appeal was dismissed as moot.

The evidence in the record on appeal indicates it was not until January 6, 2005, that LAC finally sent a copy of the Release of Garnishment to Wal–Mart.[5] *See*

---

4. In 2000, the Kansas Legislature enacted a new Code of Civil Procedure for Limited Actions (chapter 61). The Kansas Judicial Council prepared forms reflecting the provisions of the new code. The forms were approved by the Supreme Court of Kansas by Administrative Order No. 159 and copies thereof appear as Attachment I to the Appellant's Brief.

5. The date Wal–Mart first received a copy of the Release of Garnishment from LAC is uncertain. There was testimony by LAC's garnishment manager at the hearing on this matter that LAC faxed Wal–Mart a copy of the non-file stamped release of garnishment on November 30, 2004. *Transcript of Proceedings held December 13, 2005,* at 33, *in* Appellant's App. at 116. But, there was no physical evidence submitted to corroborate this testimony. The garnishment manager also testified that she attempted to call Wal–Mart on November 30, 2004, December 16, 2004, and January 3, 2005. *Id.* at 33–34, *in* Appellant's App. at 116–17. Interestingly, however, at the December 21, 2004, hearing on the Second Turnover Motion, LAC's counsel did not have a copy of the Release of Garnishment

*Attachment III–4 to Appellant's Brief.* As a result, Debtor's December 30, 2004, and January 11, 2005, paychecks were again garnished. Debtor was therefore forced to file a third and fourth motion for turnover. Notwithstanding the bankruptcy court's admonition, LAC took no further action to insure a proper release of the garnishment. Because of this failure, Debtor filed a motion in state court for an order releasing the garnishment. A hearing was set on the motion for January 14, 2005, and an order releasing garnishment was entered January 19, 2005.[6] Debtor then forwarded the court order to Wal–Mart and the garnishment of her wages finally ceased.

As a result of LAC's violation of the automatic stay and the continued garnishment of her wages, Debtor sustained damages[7] and incurred attorney fees. Therefore, Debtor asked the bankruptcy court to award her damages, attorney fees, and sanctions for violation of the stay. The bankruptcy court held a hearing on the matter on December 13, 2005. On December 28, 2005, the bankruptcy court entered its order awarding Debtor both compensatory and punitive damages as follows: $2,000 in actual damages; $2,498.47 in attorney fees incurred in connection with the First Appeal; $727.39 in attorney fees incurred in connection with obtaining the state court order releasing garnishment; $1,851.10 in attorney fees incurred in connection with the motions for turnover and sanctions evidentiary hearing; and $5,000 in punitive damages. Accordingly, the bankruptcy court entered judgment against LAC in the total amount of $12,076.96.

LAC immediately appealed the judgment. However, LAC did not seek a stay of the judgment pending appeal until March 7, 2006. Further, LAC did not give notice of its request for stay to Debtor until May 22, 2006. The bankruptcy court denied LAC's motion for stay on June 6, 2006. LAC also filed a request for emergency stay with this Court, which was denied. After the appeal was taken to this Court, Debtor fully satisfied her judgment by obtaining a non-wage garnishment order from the state court and garnishing LAC's checking account. This resulted in the judgment being paid in full. After the appeal was fully briefed, Debtor moved this Court to dismiss the appeal as moot. Therefore, both LAC's appeal of the judgment against it and Debtor's motion to dismiss the appeal are currently before this Court for decision.

## II. JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have thus consented to appellate review by this Court.

that had allegedly been sent to Wal–Mart. *Transcript of Proceedings held December 21, 2004,* at 11, *in* Appellant's App. at 68.

6. LAC actually opposed the motion, and after the order was entered, filed a motion for reconsideration.

7. Debtor could no longer afford the rent on her apartment and was forced to buy out her lease in the amount of $1,500 and move in with her mother. *See Transcript of Proceedings held December 13, 2005,* at 17–18, *in* Appellant's App. at 100–101. Additionally, Debtor had to borrow $250 from her boyfriend and $300 from her mother. *Id.* at 19–20, *in* Appellant's App. at 102–103.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In this case, the decision of the bankruptcy court imposed damages and sanctions for willful violation of the automatic stay. Nothing remains for the bankruptcy court's consideration. Thus, the decision is a final order for purposes of review.

## III. STANDARD OF REVIEW

Whether a party's actions violate the automatic stay is a question of law. *Diviney v. NationsBank of Tex., N.A. (In re Diviney),* 225 B.R. 762, 769 (10th Cir. BAP 1998) (quoting *In re Edwards,* 214 B.R. 613, 618 (9th Cir. BAP 1997)). We review the bankruptcy court's legal conclusions *de novo. De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

We review the bankruptcy court's finding that a creditor's action constituted a willful violation of the stay for clear error. *Diviney,* 225 B.R. at 769. A factual finding is "clearly erroneous" when " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'" *Las Vegas Ice & Cold Storage Co. v. Far W. Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *LeMaire ex rel. Le Maire v. United States,* 826 F.2d 949, 953 (10th Cir.1987)). In reviewing findings of fact, we are compelled to give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr.P. 8013.

We review an award of sanctions for a violation of the automatic stay under the abuse of discretion standard. *Diviney,* 225 B.R. at 769. "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991)). As with the clearly erroneous standard, when applying the abuse of discretion standard, deference is given to the bankruptcy court " 'because of its first-hand ability to view the witness or evidence and assess credibility and probative value.'" *Id.* (quoting *McEwen,* 926 F.2d at 1553–54).

## IV. ANALYSIS

### A. Mootness

After this appeal had been fully briefed and submitted to this Court, Appellee filed a motion to dismiss the appeal on the ground of mootness. Therefore, this Court additionally must determine the jurisdictional issue of whether the appeal is moot, including whether it is moot in the constitutional sense, i.e., that there is no case or controversy. *See* U.S. Const. art. III, § 2, cl. 1; *Yellow Cab Coop. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Coop. Ass'n),* 132 F.3d 591, 594 (10th Cir.1997); *In re L.F. Jennings Oil Co.,* 4 F.3d 887, 889 (10th Cir.1993); *see also Arizonans for Official English v. Ariz.,* 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (court has an obligation to satisfy itself that it has jurisdiction to hear an appeal).

" '[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *County of L.A. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). A controversy is no longer "live" when the reviewing court is not capable of rendering effective relief or restoring the parties to their original position. *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895); *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *In re Osborn*, 24 F.3d 1199, 1203 (10th Cir.1994); *In re King Res. Co.*, 651 F.2d 1326, 1331–32 (10th Cir.1980) (if the only effect of reversal on appeal would be to order the impossible, court should not address the merits of the appeal). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Osborn*, 24 F.3d at 1203 (quoting *Church of Scientology*, 506 U.S. at 12, 113 S.Ct. 447 (quoting *Mills*, 159 U.S. at 653, 16 S.Ct. 132)).

In this case, Debtor asserts that events have occurred since the bankruptcy court's judgment making it impossible for this Court to grant relief on appeal. Specifically, Debtor argues she has satisfied the judgment she obtained against LAC by garnishing its checking account. Since the judgment has been paid in full, Debtor contends the appeal is moot. We disagree.

While it is true that LAC's requests for stay to the bankruptcy court and this Court were denied and the judgment was not superseded by an appeal bond, a remedy on appeal still exists. If this Court were to reverse the bankruptcy court's order, it could order Debtor to disgorge the funds she garnished from LAC's checking account. *See Strong v. Laubach*, 443 F.3d 1297 (10th Cir.2006).[8] Since the appeal is not, as Debtor contends, moot, we must now address the merits of the case.

## B. Merits of the Case

Title 11 U.S.C. § 362(h) provides in pertinent part: "(h) An individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, *may* recover punitive damages." 11 U.S.C. § 362(h) (emphasis added).[9] "[A] garnishing creditor has an affirmative duty to release the garnishment of a debtor's wages as soon as it learns of the pending bankruptcy." *In re Pulliam*, 262 B.R. 539, 542 (Bankr.D.Kan.2001). On appeal, LAC asserts it did not willfully violate the automatic stay because it did everything it was required to do to release the garnishment of Debtor's wages. LAC characterizes its conduct as a "ministerial" or "technical stay violation," and therefore argues the bankruptcy court erred in awarding damages, attorney fees and sanctions. *Appellant's Brief* at 8, 12. We strongly disagree.

According to LAC, the only action necessary to release a garnishment in Kansas is to file a "Release of Garnishment" form

---

**8.** A judgment debtor who is unable or is unwilling to post a supersedeas bond retains the right to appeal even if the judgment is executed. Should the judgment be reversed on appeal, a district court may, on motion or sua sponte, order the judgment creditor to restore the benefits obtained.

*Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir.2006) (citations omitted).

**9.** This is a pre-BAPCPA case and is governed by the version of 11 U.S.C. § 362 in effect prior to October 17, 2005.

signed by the judgment creditor, and further, that a court order closing a garnishment case is "improper."[10] *Id.* at 10. LAC contends the court "displayed an ignorance of chapter 61 garnishments done in State Court." *Id.* As proof of its position, LAC attaches to its brief letters from other Kansas attorneys confirming they use the same release of garnishment procedures as LAC. *See id. at Attachments III–6, 7 & 8.*

 We need not address whether LAC's contentions are correct, because even if they are, LAC failed to timely serve a copy of the Release of Garnishment on either Debtor or Wal–Mart. Kansas statutes require that a copy of the release of garnishment be provided to the defendant and the garnishee. Kan. Stat. Ann. § 61–3507(b) (2005). Even though LAC was immediately notified of Debtor's bankruptcy, Debtor's counsel did not receive a copy of the Release of Garnishment until he contacted LAC to request one. Moreover, the evidence in the record on appeal indicates it was not until January 6, 2005, that LAC finally sent a copy of the Release of Garnishment to Wal–Mart. This was twelve weeks after Debtor's notice of bankruptcy was mailed to LAC.[11] Merely filing the Release of Garnishment with the state court, as LAC alleges it did on October 19, 2004, is not enough. A judgment creditor must communicate the release to the garnishee in order to effectuate termination of the garnishment.

Additionally, assuming LAC's argument that a court order is not required for releasing a garnishment is true, it does not mean a court order cannot be obtained. The Kansas limited actions statutory scheme may be meant to streamline garnishment procedures, but it certainly does not preclude judicial intervention. Therefore, LAC could have in fact obtained an order releasing garnishment from the state court, and ultimately, it was Debtor who was forced to get the court order to finally end the garnishment. Also, at the December 21, 2004, hearing on the Second Turnover Motion, the bankruptcy court informed LAC it had a duty to do more—go to the state court and procure an order releasing the garnishment. Still, LAC sat back and waited for Debtor to obtain its own order from the state court. This, Debtor was not required to do.

 With regard to § 362(h), this Court has previously held that "[a] 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Diviney v. NationsBank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP1998) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr.D.D.C.1988)). In this case, there is no doubt that the postpetition garnishment of Debtor's wages was a vio-

10. The text of the "standard form" is one sentence: "The judgment creditor hereby releases the garnishment order issued on or about _____ in this action." The form is to be signed only by the judgment creditor. The form was prepared by the Kansas Judicial Council and approved by the Supreme Court of Kansas. *See supra* note 4. LAC further contends that the forms approved by Administrative Order 159 provide all the forms necessary for a limited actions (chapter 61) case, and there is no court order for

releasing the garnishment. *Appellant's Brief* at 6.

11. *See supra* note 5, for LAC's claim the release of garnishment was sent to Wal–Mart on November 30, 2004. Even if it was sent on November 30, 2004, this was still more than six weeks after being notified of Debtor's bankruptcy and after Debtor had filed the first of its four motions for turnover.

lation of the automatic stay. It is not necessary to show a specific intent. It is uncontroverted that LAC was immediately notified of Debtor's bankruptcy. Further, LAC's refusal to take affirmative action to get the garnishment stopped cannot be seen as anything other than intentional conduct.

We must affirm the bankruptcy court's finding that LAC's conduct was willful unless we conclude the finding was clearly erroneous. *Diviney*, 225 B.R. at 774. Under the circumstances presented, the bankruptcy court's finding is factually supported, and it was correct in concluding that Debtor was entitled to damages and attorney fees.

█ In addition to finding that LAC willfully violated the stay, the bankruptcy court found that the violation was egregious. Therefore, it awarded Debtor punitive damages. Our review of the bankruptcy court's award of sanctions for a violation of the automatic stay is for abuse of discretion. *Diviney*, 225 B.R. at 769.

In this case, Debtor was compelled to file four turnover motions. Moreover, it was Debtor who filed the Release of Garnishment with the state court, and Debtor who sought and obtained the state court order releasing the garnishment. LAC did nothing, notwithstanding that at the December 21, 2004, hearing, the bankruptcy court informed counsel that LAC

> has a duty to do what any attorney would do and that is—this isn't working, let me go straight to the District Court Judge, procure an order that releases this garnishment, I'll send it to Wal-Mart and this matter is cleared up.

> It's not good enough to file [the release of garnishment] and step back and say we can't do anything else, because you know what? You can do something else. We'll continue the matter of damages to

an evidentiary hearing with regard to violation of the automatic stay....

*Transcript of Proceedings held December 21, 2004*, at 13, *ll.* 4–13, *in* Appellant's App. at 70. In light of its actual knowledge of the continuing garnishment, LAC's inaction shows a reckless disregard of Debtor's federally protected rights. We cannot say the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. Therefore, the bankruptcy court did not abuse its discretion, and its award of punitive damages in the amount of $5,000 is affirmed.

## V. CONCLUSION

The order of the bankruptcy court awarding Debtor damages, attorney fees, and sanctions for LAC's willful violation of the automatic stay is affirmed.