[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15360
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00450-CV-1-CG-B,
BKCY No. 07-12132-MAH

IN RE:


JASON A. CAFFEY,

                                                                  Debtor,

_____

KAREN RUSSELL,

                                                                  Plaintiff-Appellant,

versus

JASON CAFFEY,

                                                                  Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(June 23, 2010)

Before DUBINA, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Karen Russell appeals the bankruptcy court order awarding damages to debtor Jason Caffey under 11 U.S.C. § 362(k) (2006) due to Russell's violation of the automatic stay. The district court affirmed the bankruptcy court's award. We affirm the district court order because we conclude that Russell's conduct, including her failure to move to stay the outstanding state arrest warrant that she had procured for Caffey in her domestic support case, willfully contravened the automatic stay within the meaning of the statute.

## I. BACKGROUND

Russell sued Caffey in Alabama state court to recover unpaid child support. Caffey failed to appear at the July 2007 hearing, so the state court orally determined his liability and ordered that he be held in contempt. Shortly thereafter, on August 3, 2007, Caffey filed for bankruptcy protection in the Southern District of Alabama. On August 8, 2007, the state court judge signed the written order concerning Caffey's child support obligations and, on August 17, 2007, executed a writ of arrest.

Mobile County Sheriff's Deputies arrested Caffey on September 24, 2007, and held him until October 4, 2007, when his counsel could arrange for his release

by agreeing to pay Russell and her attorneys certain negotiated sums. Caffey later instituted an adversarial proceeding against Russell in his bankruptcy case because he contended that her conduct violated the automatic stay imposed by the bankruptcy code. *See* 11 U.S.C. § 362(a). The bankruptcy court awarded Caffey damages based on his arrest, and that order is now at issue in this appeal.

## II. STANDARD OF REVIEW

As the second court reviewing the bankruptcy court order, we review the legal conclusions made by the bankruptcy and district courts *de novo* and review the bankruptcy court's factual findings for clear error. *In re Int'l Admin. Serv., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005).

## III. DISCUSSION

A. *Notice and Service of the Adversarial Bankruptcy Proceeding*

Russell first contends that the judgment against her is void because Caffey never properly advised her of the adversarial proceeding regarding the stay violation. The bankruptcy court found that Russell had waived her objection to the absent service because her attorneys of record participated in the adversarial proceedings. *See* Fed. R. Civ. P. 12(h) (objections to insufficient service of process are deemed waived if not first made in a Rule 12 motion or responsive pleading). Russell further disputes the finding that her attorneys had the authority

3

to waive the defense on her behalf.  We note, however, that a presumption of authority arises when a licensed attorney makes an appearance on behalf of a client.  *See Dorey v. Dorey*, 609 F.2d 1128, 1131 n.5 (5th Cir. 1980).

Russell argues that her attorney's lack of admission to the bankruptcy court established an implicit limitation on the attorney's authority to represent her in the adversarial dispute.  Russell cites no authority for the proposition that an attorney's authority is bounded by his bar and court admissions, and we find nothing in the record that reflects such an understanding between the attorney and Russell or the bankruptcy court.  Nothing in the record suggests that the bankruptcy court's findings regarding waiver and agency were clearly erroneous.

B.  *Violation of the Bankruptcy Stay*

1. Notice of the Bankruptcy Proceeding

Russell next contends that she could not have willfully violated the stay because she never received notice of Caffey's bankruptcy petition.  The bankruptcy court found that, despite the lack of personal notice delivered to Russell, Caffey did sufficiently deliver notice to Russell's attorneys.  In her brief, Russell does not dispute this finding so much as she disputes its legal consequence—she contends that personal service was required, and that such service must have been made before the state court entered its final judgment.

4

The bankruptcy court correctly determined that the notice given to Russell's attorneys sufficiently gave her knowledge of Caffey's bankruptcy petition. *See Cooper v. Lewis*, 644 F.2d 1077, 1082 (5th Cir. Unit A May 1981) (noting that a party is considered to have notice of all facts conveyed to his attorney). Moreover, Russell's complaint that the notice did not come before the state court entered its final judgment is inapposite because she never acted on that notice in the approximately 47 days between the execution of the arrest warrant and Caffey's arrest. She continued to violate the stay by extracting money and promises of future payments from Caffey long after her attorneys received notice of his bankruptcy petition. Given these facts, there is no clear error in the bankruptcy court's finding that Russell knew about Caffey's bankruptcy filing.

2. *Carver* abstention

In *Carver v. Carver*, 954 F.2d 1573, 1579-80 (11th Cir. 1992), we held that in some narrow circumstances, bankruptcy courts ought to abstain from imposing sanctions for violations of the automatic stay where the underlying actions involved domestic support obligations. Russell contends that the bankruptcy court should have abstained from imposing sanctions in this case because, as in *Carver*, the offending conduct involved an attempt to obtain past due support obligations.

There are several factual differences between the case here and those in

5

*Carver* that led us to mandate abstention. First, in *Carver*, we found that the debtor's other creditors were not harmed by the post-petition collection action and the debtor's arrest. 954 F.2d at 1580. Here, the bankruptcy court specifically found that the arrest and imprisonment of Caffey harmed his other creditors because it limited his income opportunities and therefore reduced the assets available to pay his debts. Second, there is no indication that Caffey intended to use his bankruptcy petition as a "weapon" to avoid his support obligations, unlike the debtor in *Carver* who filed for bankruptcy without notifying the creditor he later sued for violating the automatic stay. *See id.*

Third, the record shows that Caffey was forthright about the pending bankruptcy proceedings at his release hearing, unlike the debtor in *Carver* who stayed silent about his bankruptcy at his contempt hearing in order to, we surmised, preserve his future adversarial claim against the creditor. *See id.* Finally, we note that, on the whole, the concern about bankruptcy courts interfering with essential state court functions like domestic support obligations is not triggered in a case like this where the imposition of sanctions has no effect on the validity of the state court judgment.

3. Civil or Criminal Contempt

Russell argues that the contempt action she pursued against Caffey was for

criminal contempt, not civil contempt, and was therefore not subject to the automatic stay under 11 U.S.C. § 362(b)(1). Russell's legal assertion depends on a factual question—whether the state court contempt order contained a purge amount. Russell asserts that the order contained no purge amount and was thus a criminal sanction. The record in this case contradicts Russell's contention. The state court clearly set a purge amount in its August 8, 2007, final judgment order. (Bankr. R. 2, Exh. A., ¶ 6.) Given the record, we conclude that the bankruptcy court did not clearly err in finding that the state court contempt action was civil in nature and thus subject to the automatic stay.

4. Judicial Estoppel

Russell contends that Caffey ought to be judicially estopped from claiming a violation of the bankruptcy stay because he failed to raise the stay in negotiating his release following arrest. One of the factors we evaluate in applying judicial estoppel is "whether a party succeeded in persuading a court to accept an earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (internal quotation marks omitted). Russell has failed to point out anything in the record that shows Caffey succeeded in persuading the state court to do anything in the

absence of the stay—he obtained his release from prison only after agreeing to pay Russell and her attorneys tens of thousands of dollars. Nothing in the record indicates that Caffey argued that the bankruptcy stay did not apply in negotiating his release and, even if he had done so, nothing indicates that he would have gained anything from such a position. Judicial estoppel does not apply on these facts.

F. *Conduct Violating the Stay*

Russell finally disputes the sanctions imposed on her because she asserts that they penalize her inaction. She claims that once the state court orally rendered its judgment of contempt before Caffey's bankruptcy petition, she had no affirmative duty to delay the contempt order and arrest warrant because they materialized after her involvement in the proceedings ceased.

We are doubtful of Russell's legal assertion about her responsibilities. *See* 11 U.S.C. § 362(a)(1) (prohibiting "the commencement or continuation" of judicial process to recover a debt); *In re Scroggin*, 364 B.R. 772, 781 (B.A.P. 10th Cir. 2007) (holding that a "refusal to take affirmative action to get the garnishment stopped" is a willful violation of the automatic stay); *In re Johnston*, 321 B.R. 262, 282–86 (D. Ariz. 2005) (holding that creditor had affirmative duty to move to vacate state court contempt and arrest orders that were not themselves issued in

8

violation of the automatic stay); 2 Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual* ¶ 362.03[4] (3d ed. 2009) ("[L]evy of execution, restraining orders, civil arrest orders and exercise of any other postjudgment remedies are stayed."). Even assuming that Russell had no affirmative duty to vacate the outstanding orders, the record demonstrates that Russell actively violated the stay after the arrest warrant was executed. She opposed Caffey's release from prison after being informed of his pending bankruptcy and negotiated $80,000 in payments from Caffey as a condition of his release. This is precisely the type of conduct that the automatic stay seeks to prevent, and the bankruptcy court did not clearly err in finding this to be a willful violation of the stay.

## IV. CONCLUSION

The bankruptcy court did not clearly err in finding that Russell willfully violated the automatic stay. Through her attorneys, Russell had notice of both Caffey's bankruptcy proceeding and the adversarial suit against her. She violated the stay by failing to vacate the state court orders and by extracting payments from Caffey in exchange for his release. Accordingly, we affirm the district court's order affirming the bankruptcy court's order awarding damages to Caffey.

**AFFIRMED.**